## SLAYTER & CO. v. UNITED STATES INSULATION CORPORATION.

District Court, S. D. New York.

Aug. 31, 1937.

Gifford, Scull & Burgess, of New York City (Newton A. Burgess and Joseph V. Meigs, both of New York City, and C. B. Belknap, of Toledo, Ohio, of counsel), for plaintiff.

Norton & Simmons, of New York City (M. Theodore Simmons, of New York City, of counsel), for defendant.

WOOLSEY, District Judge.

■ My decision herein is for the plaintiff. I hold the single claim of the reissued patent, No. 19,929, valid and infringed.

I. This cause, as it now comes before me, is based on the single claim of reissue patent No. 19,929, for a method of heat insulating.

There is not any question of the proper venue being in this district; incorporation of the parties is not disputed, and the locus standi of the plaintiff is established, for it is shewn to be a corporation of Illinois to which the patentee has assigned the said reissued patent.

The defendant challenges the validity of the reissued patent on the ground that it is intrinsically invalid, because it is broader than the original patent, No. 1,728,837, and also that it is invalid because of lack of invention, because of anticipation by other patents domestic and foreign, and because of alleged prior use of the method of heat insulating claimed. In the alternative defendant denies infringement.

II. The original patent, U. S. No. 1,728,837, for a method of heat insulating, was applied for by Games Slayter, of Forest Park, Ill., on September 30, 1927,

serial No. 223,144, and granted to him on September 17, 1929.

Its sole claim read as follows:

"What I claim as my invention is:

"The method of building a wall,

"Whereby to increase the insulating and fire resisting properties thereof without undue added weight,

"Which comprises utilizing spaced apart walls of a building previously constructed as a form for receiving heat insulating material,

"Providing openings to afford access to the air spaces between said spaced apart walls,

"Inserting the outlet end of a conduit through said openings,

"And forcing through the said conduit a comminuted heat insulating material,

"Said material being of sufficiently light weight,

"And devoid of free moisture content of sufficient amount to cause bulging or other injurious effects upon the exposed surfaces of said walls."

III. This claim was held invalid by the Circuit Court of Appeals for the Seventh Circuit on December 21, 1935, in the case of Therm-O-Proof Insulation Company v. Slayter & Co., 80 F.(2d) 557, in which a decision by Judge Barnes in the patentee's favor was reversed on the ground that, in view of the prior art there shewn, the claim of the patent was so vague and indefinite in its wording that the ambit of the monopoly of Slayter's patent over and beyond that art was not determinable.

IV. The instant suit was originally brought on the claim of the original patent on May 31, 1932.

A motion by the defendant, made August 8, 1932, to dismiss the complaint on the ground that the patent was invalid on its face for want of invention, was denied by Judge Caffey on September 14, 1932, and the parties were left to a trial on plenary proofs in accordance with the accepted practice in this District.

V. On January 22, 1936, after the decision of the Circuit Court of Appeals for the Seventh Circuit, Slayter surrendered his original patent and applied for a reissue. His application was granted on April 14, 1936.

The single claim of the reissued patent reads as follows:

"What I claim as my invention is:

"The method of building a wall

"whereby to increase the insulating and fire resisting properties thereof without undue added weight,

"which method comprises

"utilizing spaced apart walls of a building previously constructed as a form for receiving heat insulating material

"providing openings to afford access to the air spaces between said spaced apart walls,

"inserting the outlet end of a conduit through said openings,

"and pneumatically forcing through the said conduit

"a finely divided but not powdered heat insulating and fire resisting material,

"said material being substantially free from dust and of low specific gravity and of a size to provide a large body for the amount of weight and substantially devoid of free moisture content

"whereby said wall is heat insulated and rendered fire resistant without bulging or damage to the surface thereof or to decorations thereon."

VI. After the reissue, the plaintiff filed in this suit an amended and supplemental bill of complaint based on the single claim of the reissued patent.

It is on this supplemental complaint and the defendant's answer thereto—wherein the issues above outlined are raised—that this cause now comes before me.

VII. The claim, as reissued, is not any longer subject to the principal criticism of vagueness made of it by the Circuit Court of Appeals of the Seventh Circuit, and it is not broader than the original claim, but there remains for me to consider whether any invention was involved in the method which Slayter claims in his reissued patent, and, if so, whether the defendant has been guilty of infringement thereof.

It must be remembered that—whilst, at first reading, the claim seems, perhaps, to be hybrid because it involves a product and the means of using it—what Slayter claimed was "a method of building a wall." The kind of material used to build his wall was an integral part of his method—of which the success depended entirely on the characteristics of the synthetic material, which he devised and claims is new.

Admittedly there was not any invention involved in any of the elements of his method other than his material. Making a hole in a wall is ancient in the useful arts, and moving an adequately comminuted solid through a pipe by air pressure, though newer, is not new. E. g. Powers-Kennedy Contracting Co. v. Concrete Mixing & Conveying Co., 282 U.S. 175, 180, 51 S.Ct. 95, 75 L.Ed. 278. But those two elements of Slayter's claim involve merely getting access to the space wherein his wall was to be constructed, and transportation for his wall substance to such point of access.

If there be any new element in, or any new result achieved by, Slayter's patent such element or result must be found in his synthetic insulating material.

VIII. When, in early 1925, Slayter started his quest for an insulating material which could be blown into houses already built, he could not find anything in the art that would meet the specifications which he felt must be met in order to get a marketable insulating material for that purpose.

He set out to find a lightweight, homogeneous, synthetic, insulating substance of such composition that it could be blown in between the outer and the inner walls of a house already built, so that it would fill all parts of such intramural space as was tapped for the operation, without damaging, by dust or dampness, the plaster, wall paper, or decorations of the inner wall of the house or the furnishings of the rooms thereof and without having its constituent particles disintegrated with a consequent destruction or decrease of its value as insulation.

By December 25, 1926, after nearly two years of experiments and after spending upwards of $100,000 therein, he succeeded in his quest and developed a synthetic insulating material, with which he successfully "blew" a house which he owned.

This material is described in the specifications of Slayter's original and of his reissued patent.

Aside from certain minor ingredients, which—because they do not involve the most important characteristics thereof—need not be here discussed, Slayter's insulating material consists of corncobs and paper of approximately equal volume, chopped up and mixed, in a machine devised for the purpose, with plaster of paris, the whole mixture being dampened with the amount of water—15 per cent. of the weight of the plaster of paris—which the latter ingredient will absorb and retain as its water of constitution when it hardens again into gypsum.

Properly compounded, this synthetic material before blowing is an approximately homogeneous substance consisting of capsules—varying from one-sixteenth to one-quarter of an inch in diameter—each composed of paper and corncob mixed, and covered by dampened plaster of paris. After the mixture is blown into place, the damp plaster of paris holds its water of constitution, and the interior wall becomes a hard, caked fire resisting body of light weight, which contains interstices forming air pockets and entirely fills the intramural space which has been "blown."

Slayter's material, therefore, can be blown damp and so substantially dust free, and will, after being blown, set dry—a most ingenious collocation of characteristics, which eliminates risk of damage to the plaster or wall paper or decorations of the house, into the intramural spaces of which it is blown.

I think that, for devising this material and combining it successfully with old methods of installation to achieve a new and very useful result, Slayter is entitled to patent protection, unless the prior art or a prior user which falls within the provisions of section 31 of the patent statute, Title 35, U.S.Code, § 31 (35 U.S. C.A. § 31), precludes my granting it to him.

IX. I now turn to the defenses last mentioned.

A. The nearest citation to the plaintiff is Balduf, United States patent, No. 1,723,989, for insulation.

I hold, however, that Balduf's insulating material was never operative for the same purpose as Slayter's.

Balduf's material is sold under the trade-name of "Therm-O-Fill," and his patent is owned by the United States Gypsum Company. That company has sold thousands of tons of "Therm-O-Fill," but it has neither sold "Therm-O-Fill" on any representation that it would "blow" nor has used it to blow in a house already built.

Indeed, Balduf himself—although in the specifications of his patent he states that his material may be blown for insulating purposes into the space between the inner and outer walls of houses—testified before

Judge Barnes in the District Court in the case of Therm-O-Proof Insulation Co. v. Slayter & Co., above referred to, that he could not get good results with Therm-O-Fill when blown into the interstices between already built walls. This is shown in the affidavit of Nelson B. Sherrill on Slayter's reissue application which quotes from Balduf's testimony and which, as part of the reissue file wrapper, is before me as an exhibit.

Such an admission by Balduf, given in an attempt to defeat a claim of Slayter & Co. for infringement of its patent, conclusively disposes of any contention that Balduf's material was able to do what Slayter's could.

Furthermore, the proofs in this cause show that, when blown, the constituent particles of Balduf's material disintegrate with resultant stratification which is destructive of proper insulation.

I find, therefore, that Balduf's patent does not stand athwart the plaintiff's path in this cause.

B. The next most important citation against the plaintiff is German patent No. 378,196 granted to Wladimir Orlovsky, dated May 23, 1922, for a "Filler for Partitions."

The composition of Orlovsky's filler is principally peat, gypsum, and lime—all drying substances. It was intended for use in building walls, not in "blowing" them into houses already built. Indeed, it is not shown that it would qualify for such use, and apparently it would not, on account, inter alia, of the dust which would inevitably result when such material as Orlovsky discloses was blown. Indeed, one could practice Orlovsky's disclosure indefinitely without reaching Slayter's.

C. I find that the, thoroughly proved, blowing of regranulated cork to insulate vessels, reconditioning or building at Newport News Shipbuilding Company before December, 1926, was not a prior use of Slayter's method which would preclude me from holding that it involved invention.

If the blowing of insulation of *any* kind into a wall were what Slayter claimed, what was done at Newport News would probably be enough of a prior use to preclude invention, although tamping was there used, in addition to blowing, in order to get the cork insulation into its place.

But what Slayter claims is a "method of building a wall" with a kind of material which has certain characteristics described by him in his claim, and for which granulated cork is not an equivalent, because it is not fire resisting or substantially free from dust.

Obviously granulated cork would, for these reasons, not be an insulating material to which householders would be hospitable, and it was Slayter's objective to devise a material which would appeal to them because it could be used with safety to inner walls and to furnishings. This he did.

X. It was with his insulating material, therefore, that Slayter turned the scale in his favor, cf. Dow Chemical Company v. Williams Bros. Well Treating Corporation, 81 F.(2d) 495, 497, 498 (C.C.A. 10), Tolfree v. Wetzler, 25 F.(2d) 553, 554 (C.C.A. 3), and, although the steps which he claims for inserting it into the spaces between the inner and outer walls of houses are old, he is entitled to a patent for his "method of building a wall" with that material, of which the commercial success is decisively corroborative of my opinion that by his conception as embodied in his patent he has added something of value to the art of insulation.

For, if the question of patentability be deemed to be nicely balanced in this cause, the casting consideration in determining that issue is the commercial success of Slayter's material which was prompt and considerable.

Some fifteen other houses were satisfactorily insulated with plaintiff's material soon after it was devised, and many important companies promptly took out licenses under Slayter's patent. Among the licensees were such companies as Johns-Mansville Company, Eagle-Picher Lead Company, Grand Rapids Plaster Company, Tennessee Rock Products Company, Capitol Lime & Cement Company of Baltimore, General Insulating & Manufacturing Company, and—latest of all—the United States Gypsum Company, owner of the Balduf patent.

The Grand Rapids Plaster Company used Slayter's material up to some time in 1935, when mineral or rock wool was made in lighter weights and nodulated so that it could be blown. Whereupon it, and also nodulated glass wool, a new product, came to be used by many of the plaintiff's licensees in their house-blowing operations under the patent, and, as these materials achieve the same purpose as Slayter's material in substantially the same way, they have now practically superseded it

for such use. Without any attempt at a thorough census, the evidence shews that upwards of 87,000 houses have been "blown" by plaintiff's licensees since Slayter secured his patent.

XI. When in one of the useful arts many different men are engaged in seeking the same or a similar objective for its improvement, it is the man who first takes the final forward step which causes the embodiment of his conception—whether it be a process, a product, or a device—to emerge, by reason of its intrinsic merit, from the twilight zone of experiments and approximations into the sunlight of commercial success, who is entitled to an inventor's status. The Barbed Wire Patent (Washburn & Moen Mfg. Co. v. Wiler), 143 U.S. 275, 12 S.Ct. 450, 36 L.Ed. 154; Magowan v. New York Belting & Packing Co., 141 U.S. 332, 343, 12 S.Ct. 71, 35 L.Ed. 781; Consolidated Safety-Valve Co. v. Crosby Steam-Gauge & Valve Co., 113 U.S. 157, 179, 5 S.Ct. 513, 28 L.Ed. 939; Webster Loom Co. v. Higgins, 105 U.S. 580, 591, 26 L.Ed. 1177.

Slayter took this final forward step in the art here under discussion and, consequently, the plaintiff, as his assignee, is entitled to protection in the practice of his patent.

XII. The wide commercial success of Slayter's invention has led, as above mentioned, to the contrivance, through the operation of what may be called commercial evolution, of insulating materials—nodulated rock, mineral, or glass wool—which have proved convenient and adequate equivalents for the material of his patent.

Nodulated mineral, rock, or glass wool is now used for blowing insulation by most of the plaintiff's licensees.

Mineral wool is used by the defendant company which is not licensed by the plaintiff.

The use of these materials by the plaintiff's licensees is commercial proof that they are equivalents to—perhaps, in some ways, improvements on—the insulating material of Slayter's disclosure. Thus they conclusively bridge the gap between the plaintiff's patent rights and the defendant's infringement thereof, cf. Fleischer Studios v. Ralph A. Freundlich Inc. (D.C.) 5 F.Supp. 808, 809, for by Slayter's specifications he expressly did not limit his monopoly to his disclosed insulating material, but left open the question of equivalents, cf. Paper Bag Patent Case (Continental Paper Bag Co. v. Eastern Paper Bag Co.), 210 U.S. 405, 418, 28 S.Ct. 748, 52 L.Ed. 1122, and his claim was broad enough to cover the nodulated mineral or rock wool used by the defendant, which was not a substance known and used in that form for insulation when Slayter got his patent.

XIII. I hold, accordingly, that the claim of plaintiff's reissued patent No. 19,929 is valid and that it has been infringed by the defendant. The plaintiff, therefore, is entitled to an interlocutory decree giving the plaintiff costs and embodying the order herein above required, the usual form of permanent injunction granted in patent causes, and a provision for a reference to a special master to whom the defendant must make true accounting of any profits it has derived from its infringement of the plaintiff's patent, and who will assess any damages which may have been suffered by the plaintiff therefrom.

I should appreciate it if counsel could agree on the special master, or, if they cannot, I should like to have several names suggested to me of persons who do not represent clients with interests involved in the insulating art.

XIV. This opinion must stand as the findings of fact and conclusions of law in this cause under Equity Rule 70½, 28 U.S.C.A. following section 723. Hazeltine Corporation v. Radio Corporation (D.C.) 52 F.(2d) 504, 512; Lewys v. O'Neill (D.C.) 49 F.(2d) 603, 618; Briggs v. United States, 45 F.(2d) 479 (C.C.A. 6); Stelos Company v. Hosiery Motor-Mend Corporation (D.C.) 60 F.(2d) 1009, 1013; Id., 72 F.(2d) 405 (C.C.A. 2); Id., 295 U.S. 237, 55 S.Ct. 746, 79 L.Ed. 1414; Cf. also El Sol (D.C.) 45 F.(2d) 852, 856, 857; Southern Pacific Co. v. U. S., 72 F.(2d) 212 (C.C.A. 2), and an order so providing must be included in the interlocutory decree.

The interlocutory decree may, unless agreed as to form, be submitted to me for signature on three days' notice.