### SLAYTER & CO. v. STEBBINS–ANDERSON CO., Inc., et al.

#### No. 4726.

Circuit Court of Appeals, Fourth Circuit.

Feb. 8, 1941.

Newton A. Burgess, of New York City, and Edward R. Johnston, of Chicago, Ill. (Bartlett, Poe & Claggett, of Baltimore, Md., Lee J. Gary, of Chicago, Ill., and J. Kemp Bartlett, Jr., of Baltimore, Md., on the brief), for appellant.

Theodore S. Kenyon, of New York City (Marbury, Gosnell & Williams, of Baltimore, Md., Frederick Bachman, of New York City, and William L. Marbury, Jr., of Baltimore, Md., on the brief), and Charles Markell, of Baltimore, Md. (Charles Markell, Jr., of Baltimore, Md., on the brief), for appellees.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This suit was brought to enjoin the alleged infringement of the Slayter Reissued Patent No. 19,929 entitled "Method of Heat Insulating". The specification of the patent describes a method for the insulation of buildings which consists of forcibly blowing into the dead air space between the outer sheathing and the inner laths of the walls an insulating material composed of comminuted corn cobs and paper in a ratio of 9 pounds of corn cobs to .9 pounds of paper, mixed with 9 pounds of plaster of Paris and 2 ounces zinc chloride, lime or other suitable fungicide. While the specification describes one material and one method of applying it, the patentee expressed a wish not to limit the method to the particular materials mentioned.

The original patent contained a single claim as follows: "The method of building a wall whereby to increase the insulating and fire resisting properties thereof without undue added weight, which comprises utilizing spaced apart walls of a building previously constructed as a form for receiving heat insulating material, providing openings to afford access to the air spaces between said spaced apart walls, inserting the outlet end of a conduit through said openings, and forcing through the said conduit a comminuted heat insulating material, said material being of sufficiently light weight and devoid of free moisture content of sufficient amount to cause bulging or other injurious effects upon the exposed surfaces of said walls."

This patent was held invalid in Therm-O-Proof Insulation Co. v. Slayter & Co., 7 Cir., 80 F.2d 557. Judge Evans said that the claim described both a process and a product, and concluded that the claim should be considered a process claim, restricted to the use of the particular material described therein. He then showed that there was no invention, in view of the prior art, in providing an opening in a wall and blowing a filling material through a conduit into the open space beyond; and thus finding that the only novelty in the claim resided in the application of the

method to the material described, he examined the description and found it so indefinite and vague, especially in view of the prior art dealing with materials similarly employed, that the patent did not warrant the protection of the courts.

A month after this decision was rendered, Slayter applied for a reissue, and the reissued patent in suit was granted, in which the single claim was modified as to the description of the material so as to read as follows: "The method of building a wall whereby to increase the insulating and fire-resisting properties thereof without undue added weight, which method comprises utilizing spaced apart walls of a building previously constructed as a form for receiving heat insulating material, providing openings to afford access to the air spaces between said spaced apart walls, inserting the outlet end of a conduit through said openings, and pneumatically forcing through the said conduit a finely divided but not powdered heat insulating and fire-resisting material, said material being substantially free from dust and of low specific gravity and of a size to provide a large body for the amount of weight and substantially devoid of free moisture content whereby said wall is heat insulated and rendered fire resistant without bulging or damage to the surface thereof or to decorations thereon."

In this form, the patent came before the District Court of the Southern District of New York in Slayter & Co. v. United States Insulation Corp., 20 F.Supp. 376. Judge Woolsey held that the claim was no longer subject to the defect of vagueness, and proceeded to inquire whether any invention was involved in Slayter's method of building a wall, using as an integral part of the method the particular kind of material described in the claim. The judge concluded, in harmony with the decision of the Circuit Court of Appeals for the Seventh Circuit, that if the patent involved any new element or any new result, it resided in the synthetic insulating material; and he found, upon consideration of the prior art, that the material which Slayter devised possessed the necessary qualities for successful operation, and was not anticipated by the prior art.

This conclusion was based upon the following findings of fact that seemed to the court to be tenable upon the record before it; (1) When Slayter started his quest for an insulating material in 1925, he could not find anything in the art that would serve his purpose; but in December, 1926, after two years of effort and the expenditure of more than $100,000, he found what he needed in the material described in the specification. After this material is blown into place, it becomes an interior wall consisting of a hard, caked fire resisting body of light weight and substantially free from dust—"a most ingenious collocation of characteristics, which eliminates risk of damage to the plaster or wall paper or decorations of the house, into the intramural spaces of which it is blown." The success of this material led to the contrivance through "commercial evolution" of equivalent insulating material, such as mineral or glass wool. (2) The blowing of regranulated cork to insulate vessels at Newport News Shipbuilding Company before 1926 was not a prior use of the Slayter method, because granulated cork is not fire resisting or substantially free from dust, and is therefore not an equivalent of the Slayter material. (3) Slayter's material turned the scale in his favor in weighing the question of patentability, because it achieved prompt and considerable commercial success. It was used satisfactorily in fifteen houses soon after it was devised, and many important companies promptly took licenses under the patent. (4) The Grand Rapids Plaster Company used Slayter's material up to some time in 1935, when mineral or rock wool was made in lighter weights and nodulated so that it could be blown. Whereupon it, and also nodulated glass wool, a new product, came to be used by many of the licensees under the patent, and as these materials achieve the same purpose, they have now practically superseded the use of Slayter's material. Upward of 87,000 houses have been "blown" by the licensees since Slayter secured his patent.

Finally, the patent in its reissued form was considered in the pending case by Judge Coleman who held it invalid after a full discussion of the law and the facts in an opinion reported at, D.C., 31 F.Supp. 96. He held also that the patent was not infringed because granulated mineral wool, the insulating material used by the Stebbins-Anderson Company, the defendant, and the Standard Lime and Stone Company, the intervener, is not equivalent to the material of the patent. He was unable upon the evidence before him to make findings like those of the New York court

outlined above, but reached contrary conclusions which we think are amply supported by the evidence in the record in this case. Thus, it was shown by manufacturers of mineral wool that material substantially similar to that used commercially today in preference to the Slayter material was used for insulating purposes long prior to his invention, and had been used in some instances as a filler of the open spaces in the walls of dwellings. Slayter himself testified that he well knew the properties of mineral wool when searching for suitable material, but rejected it as inadequate. In this he was mistaken, for it now appears that mineral wool is superior to the material which he so laboriously developed. 31 F.Supp. 100.

Moreover, the practice of blowing mineral wool into storage bins and other confined places was known prior to 1926. Even nearer to the Slayter method of insulating the walls of houses was the insulation of the walls of ships by the blowing in of granulated cork at Newport News; and this earlier practice cannot be cast aside in the pending case on the ground that granulated cork is not fit for this operation in dwellings, since the evidence here shows that it is fire resisting, although less so than the Slayter material, and far more free than that material from dust. 31 F.Supp. 103, 104.

█ Hence we lack here the evidence of useful novelty and ingenuity that led the New York court to find invention. The materials for the insulation of houses, and the pneumatic method of application lay close at hand, and, so far as materials were concerned, in a form superior to that which Slayter somewhat slowly and painfully devised. Under these circumstances, his development of the new material can hardly be called invention; and the substitution of the old for the new material by competitors in the operation of their business did not constitute infringement under the doctrine of equivalents. Nor can the adaptation of the known method of insulation of ships to the insulation of houses be deemed invention, even if the activities at Newport News did not amount to a technical anticipation. Compare Powers-Kennedy Co. v. Concrete Co., 282 U.S. 175, page 186, 51 S.Ct. 95, 99, 75 L. Ed. 278, relating to a patent for improvement in methods and apparatus for transporting concrete by compressed air, where it was said: "It consists of a combination of elements all of which were old in the art. Its application to the transportation of concrete did not involve invention. Neither the combination of old elements or devices accomplishing no more than an aggregate of old results (Hailes v. Van Wormer, 20 Wall. 353, 22 L.Ed. 241; Office Specialty Mfg. Co. v. Fenton [Metallic Mfg. Co.], 174 U.S. 492, 19 S.Ct. 641, 43 L.Ed. 1058; Grinnell [Washing Machine Co.] v. [E. E.] Johnson Co., 247 U.S. 426, 38 S.Ct. 547, 62 L.Ed. 1196), nor the use of an old apparatus or appliance for a new purpose (Roberts v. Ryer, 91 U.S. 150, 23 L.Ed. 267), is invention."

██ When the facts are seen in the present light, Slayter's commercial success loses its significance as evidence of invention. Judge Coleman found that the Slayter material, wherein resides the only novelty in the Slayter method according to all the courts that have considered the patent, was not commercially successful. 31 F.Supp. 102. Less than twenty houses were insulated with this material prior to the spring of 1928 by the Kalkite Company, a licensee, which found the venture unprofitable and discontinued the business. There is no showing that the Slayter material was ever used commercially thereafter. Later, the Wall Fill Company was organized by a former employee of Slayter, and without license under the patent, insulated a number of houses by the pneumatic method, employing rock wool as an insulating material. In August 1928, the Wall Fill Company entered into a business arrangement with the Johns-Manville Company, which had become interested in the insulation of houses by the pneumatic method and the use of rock wool. The business was continued by them without a license under the patent until October, 1931, when the Johns-Manville Company entered into a license arrangement with Slayter, and granted a sublicense to the Wall Fill Company, a purchaser of its rock wool. Beginning in 1928, the Wall Fill Company has insulated 8,500 houses, and the Johns-Manville Company through its various customers and dealers 80,000 houses using pneumatic power and Johns-Manville rock wool. 31 F.Supp. 102. Giving full weight to this evidence of commercial usage, we nevertheless agree with the conclusion below that the patent is not saved. The novel material devised by Slayter, although ap-

plied in a small number of instances, quickly gave way in the practical operation of the business to substances well known for their insulating qualities prior to the application for the patent. Furthermore, as we have seen, the disclosures of the patent, taken as a whole, lacked the quality of invention. Commercial success is decisive of patentability only when invention is in doubt. Textile Machine Works v. Hirsch Co., 302 U.S. 490, 498, 58 S.Ct. 291, 82 L.Ed. 382; Bailey v. Sears, Roebuck & Co., 9 Cir., 115 F.2d 904, 906.

The defendants claim that a system has been built up under which licenses are issued to a limited number of manufacturers of rock wool, whose customers alone are free to use the pneumatic method of insulation without interference or suit by the patentee; and that the royalties are largely devoted to the prosecution of suits under the patent against other users. Thus, it is charged that the patent is being unlawfully used as a means of obtaining a limited monopoly in the manufacture and sale of an unpatentable material. Judge Coleman found that this charge was sustained by the evidence, and not only dismissed the bill of complaint, but rendered a declaratory judgment that the patent was invalid and not infringed, and granted an injunction against infringement suits by the patentee against any of the customers of the defendant or of the intervener in the District of Maryland or elsewhere. We think this decree was justified by the invalidity of the patent, even though it be assumed that the activities of the parties to the licensing system were not unlawful.

Affirmed.