## Consolidated Fruit Jar Co. *v.* Bellaire Stamping Co.[1]

*(Circuit Court, S. D. Ohio, E. D.* June 2, 1886.)

1. **Patents for Inventions—Invention—Invalidity of Reissue.**
   Reissued letters patent No. 9,909, of October 25, 1881, to the Consolidated Fruit-jar Company, as assignee of Lewis R. Boyd, the original being No. 88,439, of March 30, 1869, for improved mode of preventing corrosion of metallic caps, are void for want of invention over the Taylor & Hodgetts patent, No. 117,236, of July 18, 1871, for caps for preserve jars.

2. **Same—Combination of Old Devices—Invention.**
   A claim for "the new article of manufacture, consisting of a screw-cap for fruit-jars and analogous uses, made of them, soft metal, with corrugated screw-threads in it, and having combined with it a separate plate or partial lining of glass, or its equivalent, permanently secured therein, substantially in the manner and for the purpose set forth," does not disclose a patentable invention, in view of prior patents, which showed all the separate elements of the claim, and all that patentee did was to combine the old screw-cap of one with the old lining-plate of another.

3. **Same—Improvement—Patentability.**
   Although a patented device may be, as evidenced by public favor and extensive use, an improvement on all older devices, the question is whether it is a patentable improvement.

In Equity.

*Causten Browne, W. C. Wilter, W. H. Kenyon,* and *A. T. Gurlitz,* for complainant.

*Geo. W. Dyer* and *Lysander Hill,* for defendant.

Sage, J. The opinion read at Cincinnati, (27 Fed. Rep. 377,) shortly after the hearing of this cause, that the Taylor & Hodgetts patent is invalid because of abandonment to the public prior to the issue of the patent, leaves the Boyd patent to be considered within

[1] See note at end of case.
Edited by Charles C. Linthicum, Esq., of the Chicago bar.

limits so narrow that it is not necessary to enter upon the discussion of many of the points argued in the briefs of counsel, or orally at the hearing.    The court adopts the statement of complainant's counsel that the Taylor & Hodgetts patent covers broadly the porcelain-lined fruit-jar caps made and sold by the defendants, and the Boyd patent covers certain modifications in said caps.    Unless, therefore, the Boyd cap is a patentable improvement upon the Taylor & Hodgetts cap, the Boyd patent is invalid, and we need not inquire whether it was anticipated by other caps in evidence, and referred to in argument.

The claim of the Taylor & Hodgetts patent is for "the combination, with the cap or cover of a fruit-jar or other vessel, of a separate plate, lining, disk, or shield of glass, porcelain, or other equivalent incorrodible material, substantially as and for the purposes described." The object of the invention, as set forth in the specification, is to provide a remedy for the corrosion of the cap or cover by the action upon it of the contents of the vessel; and the improvement is described as the combination, with a cap or cover made of any suitable metal, of a separate plate or lining of incorrodible material, in such a manner that when the cap or cover is in place upon the jar or vessel the incorrodible material shall be interposed between the contents of the vessel and that portion of the cap or cover upon which the acids would otherwise act, and thereby prevent corrosion, and the injurious consequences resulting therefrom, referred to in the specification.

In the drawings accompanying and forming part of the specification is the form of cap which was made by Taylor & Hodgetts, and described in their original application of March 26, 1856.    But it is to be remarked that this is presented only as "a form of metallic cap in which the invention may be successfully used;" and the specification adds: "It may, however, be of any other convenient form, and it may be constructed in any suitable mode, either by casting or otherwise," and the claim is so broad as to include this generalization in the specification.    It is of soft metal, and is a screw cap or cover for tin cans, which were then used for preserving fruits.    The plate of incorrodible material, it is said, may be combined with the cap in any convenient way.    The method described is to construct the cap so as to form a rim around the inner face slightly deeper than the thickness of the plate or shield, and then, after placing the plate or shield within the rim, to burnish the latter in any convenient manner down over the edge of the plate or shield, so as to securely attach it to the cap.    The cap shown in the drawings is not suitable for glass jars.    It has its screw-threads on the outside, adapted to take into internal screw-threads in the neck of the can, whereas caps for glass jars have internal screw-threads, adapted to take into threads on the outside of the neck of the jar; and the metal of the cap for a glass jar must be thin and soft, with corrugated screw-threads flexible enough to adapt themselves to the irregularities of the screw-threads on the outside of the neck of the jar.

The claim of the Boyd reissued patent is for "the new article of manufacture, consisting of a screw-cap for fruit-jars and analogous uses, made of thin, soft metal, with corrugated screw-threads in it, and having combined with it a separate plate or partial lining of glass, or its equivalent, permanently secured therein, substantially in the manner and for the purpose set forth."

Referring to the specification, we find that the screw cap "is made of thin, soft metal, so as to be capable of adapting itself to the irregularities which are found in ordinary fruit-jars," which at the date of Boyd's original patent, were rapidly superseding metallic cans for the preservation of fruit: "and is provided with corrugated screw-threads, and should, preferably, be manufactured of the same material, and in the same shape and manner, as the well-known caps used with the so-called ' Mason jar.' " Into the top of this cap the lining-plate of glass or other incorrodible material, of any desired thickness, and of any preferred cross-section, is closely fitted to the under side of the head or top of the cap, a slight shoulder to secure it firmly in place being preferably spun in the caps near its head or top; or, the specification states "it may be retained in position in any other convenient way, but it should be so secured as to form a permanent part of the cap."

That this was an improvement on the Taylor & Hodgetts cap is evidenced by the fact that it came into public favor, and was extensively sold, and that it has, in all the years that have followed, held its place as a leading cap in the market, while there has been no demand for the Taylor & Hodgetts cap. But the question is whether it was a patentable improvement. The use of a non-corrodible lining was not new with Taylor & Hodgetts. It is shown in the patent granted to R. W. Lewis, February 12, 1856. The lining there was tin, but that is not a material difference. It was tin in the cap described in the original application of Taylor & Hodgetts. The English letters patent to Betts & Stocker, granted in 1844, describe thin flexible metal close-tapped screw-caps, with separate stoppers or covers of glass; and J. K. Chase's patent, October 27, 1857, shows and describes a screw-cap of thin metal, spun to shape, and identical in all respects, except the glass lining, with the fruit-jar caps made and sold in the market under the Boyd patent. Boyd's improvement on the Taylor & Hodgetts cap consisted in combining the screw-cap of Chase with the glass lining-plate of Taylor & Hodgetts, which was the equivalent of Lewis' tin lining, embodied also in the cap described in Taylor & Hodgetts' original application. Now, if the Chase patent and Taylor & Hodgetts patent had each been valid and in force when Boyd made his improvement, that improvement must have been held to be nothing more than an ingenious attempt to evade both those patents, and quite within the range of the skill of a competent mechanic, but without anything of invention, and therefore not patentable.

Recent rulings by the supreme court of the United States make this proposition clear. In *Thompson* v. *Boisselier*, 114 U. S. 1, S. C. 5 Sup. Ct. Rep. 1042, it was held that "it is not enough that a thing shall be new in the sense that in the shape or form in which it is produced it shall not have been before known, and that it shall be useful; but it must, under the constitution and the statute, amount to an invention or discovery." See, also, *Yale Lock Manuf'g Co.* v. *Greenleaf*, 35 O. G. 386, 554, S. C. 6 Sup. Ct. Rep. 846, to appear in 117 U. S. In the case of *Gardner* v. *Herz*, 35 O. G. 999, S. C. 6 Sup. Ct. Rep. 1027, (decided May 10, 1886,) the supreme court held that where the mode of construction of the article claimed, the material employed, the form after construction, and the purpose for which it was to be used, had been described separately in earlier patents, although the article itself had never been described in any single patent, and to that extent was novel, and was of great utility, it did not require invention to produce it. The court cites with approval *Saxby* v. *Gloucester Wagon Co.*, 7 Q. B. Div. 305, which was heard before Lord COLERIDGE and Justices FIELD and BOWEN, in which the ruling was directly in point upon the proposition above stated.

I therefore hold that the Boyd patent, reissued to the complainant as his assignee, was invalid for the reason that the improvement therein described was not patentable.

The bill will be dismissed, at complainant's cost.

---

### NOTE.

#### *Novelty and Utility as Evidence of Invention.*

An increased utility, beyond what had been attained by devices previously in use, in cases of doubt, is usually regarded as determining the question of invention. Hollister v. Benedict & Burnham Manuf'g Co., 113 U. S. 59; S. C. 5 Sup. Ct. Rep. 717, (January 5, 1885.)

The fact that the older devices were not used, and the speedy and extensive adoption of the patented device, supports the conclusion of novelty in the latter. Consolidated Valve Co. v. Crosby Valve Co., 113 U. S. 157; S. C. 5 Sup. Ct. Rep. 513, (January 19, 1885.)

It is not enough that a thing shall be new, in the sense that in the shape or form in which it is produced it shall not have been before known, and that it shall be useful; but it must, under the constitution and the statute, amount to an invention or discovery. Thompson v. Boisselier, 114 U S. 1; S. C. 5 Sup. Ct. Rep. 1042, (March 30, 1885.)

If the prior devices were unsuccessful, and the improvement which resulted from the use of the patented device is manifest, there can be no doubt that the making of the latter involved invention. WALLACE, J., Bogart v. Hinds, 26 Fed. Rep. 149, (December 29, 1885.)

Though the adjustment of the different parts of the combination was novel, and the combination as an entirety useful, still, if it exhibits only the expected skill of the mechanic's calling, and not the creative work of the inventor, it is not patentable. DYER, J., Calkins v. Oshkosh Carriage Co., 27 Fed. Rep. 296, (April, 1886.)

"It has always been the law that a patentable invention, although new and useful, must be the result of something more than, and different from, mechanical skill; but the existence of novelty and utility in a patented thing was potent in the determination of the question of its patentability." McCormick v. Seymour, 2 Blatchf. 240; Furbush v. Cook, 2 Fisher, 288; Judge SHIPMAN, in Celluloid Manuf'g Co. v. Comstock & Cheney Co., 27 Fed. Rep. 358, who also said that the decision in Hollister v. Benedict & Burnham Manuf'g Co. "makes independent evidence of the existence of inventive skill, apart from inferences of such existence which may be drawn from novelty and utility, to be of greater importance than has been understood heretofore." April 24, 1886.

The fact that the patented device went at once into such public use as almost to supersede older devices is pregnant evidence of novelty, value, and usefulness; and this is a fact that has much weight, and is not to be overlooked. NIXON, J., New York Belting & Packing Co. v. Magowan, 27 Fed. Rep. 362, (February 18, 1886.)

While it is true that the utility of a machine, instrument, or contrivance, as shown by the general public demand for it, when made known, is not conclusive evidence of novelty and invention, it is nevertheless highly persuasive in that direction, and, in the absence of pretty conclusive evidence to the contrary, will generally exercise controlling influence. BUTLER, J., in Hill v. Biddle, 27 Fed. Rep. 560, (April 30, 1886.)

Where an old device or machine in general use, with acknowledged serious defects, which have long been endured because no one has previously discovered a means of obviating them, is taken in hand, and, by changing its form or structure, they are removed, and a different and improved result obtained, it may safely be affirmed that the change required invention. Where the improvement, and consequent public benefit, is great, very little evidence of invention is required. BUTLER, J., in Asmus v. Alden, 27 Fed. Rep. 684; citing Smith v. Goodyear Co., 93 U. S. 486; Washburn & M. Manuf'g Co. v. Haish, 4 Fed. Rep. 907; Eppinger v. Richey, 14 Blatchf. 307; Isaac v. Abrams, 34 O. G. 862, (May 13, 1886.)

The doctrine that independent evidence of invention, in addition to evidence of novelty and utility, is required to support a patent, reaffirmed in Yale Lock Manuf'g Co. v. Greenleaf, 117 U. S. 554, S. C. 6 Sup. Ct. Rep. 846, (March 16, 1886,) and in Gardner v. Herz, 6 Sup. Ct. Rep. 1027, (May 10, 1886.)　　　　　CHARLES C. LINTHICUM.

*Chicago, July,* 1886.